SHEAR CUTS, INC., Appellant,

v.

Kay LITTLEJOHN, Appellee.

No. 2–03–343–CV.

Court of Appeals of Texas, Fort Worth.

July 8, 2004.

Baker & McKenzie and Clayton E. Bailey, Dallas, for Appellant.

Cheryl D. Smith, Fort Worth, for Appellee.

PANEL B: DAUPHINOT, HOLMAN, and GARDNER, JJ.

**OPINION**

DIXON W. HOLMAN, Justice.

In this employment discrimination case, Appellant Shear Cuts, Inc. appeals the trial court's judgment and $107,123.50 award in favor of Appellee Kay Littlejohn. We modify the trial court's judgment to delete the award of punitive damages and otherwise affirm the trial court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Littlejohn is an African–American licensed cosmetologist who applied for a position at one of Shear Cuts' fourteen hair salons located throughout the Dallas–Fort Worth metroplex in the Fall of 2001. Although the parties disagree on the circumstances leading up to Littlejohn's discrimination claim against Shear Cuts, they agree that Littlejohn interviewed for a position at Shear Cuts' Arlington salon on October 9, 2001. They also agree that Elizabeth Martinez, an area supervisor for Shear Cuts, conducted the interview at the Arlington location.

Shear Cuts claims that during the interview Martinez had two concerns regarding Littlejohn's candidacy for employment. First, Littlejohn presented Martinez with a customer list from her previous employer, and theft of a client list is a terminable offense at Shear Cuts. Second, Shear Cuts could only offer $10 per hour as a store manager, which would constitute a drop in pay for Littlejohn because she made $21,000 per year plus bonuses at her previous job. Martinez testified that she did not offer Littlejohn a job and instead told Littlejohn that she would call her.

Littlejohn's version of the interview is quite different. She claims that Martinez told her that managers could make at least $30,000 a year and that some were making $50,000. According to Littlejohn, Martinez offered her a position and agreed upon $10 per hour plus 50% commission on sales over $1,000 per week, assuring her that she would make at least $30,000 her first year.

The following day, Littlejohn went to the Arlington salon and began setting up

her supplies at one of the stations. Littlejohn claims that upon being told Appellee would manage the salon, one of the employees, Wendy Swift, stated, "Hell no ... this can't be." Swift then made phone calls to a coworker and to Martinez. Littlejohn also claims that an Asian employee walked out, asking Wendy, "[W]hy [are] you talking to her like that ... I don't want to be here with this going on." Littlejohn testified that Martinez called her and fired her, explaining that the employees were concerned that they would lose their white clientele because blacks would be coming to the salon.

Shear Cuts, on the other hand, claims that after Littlejohn unexpectedly appeared at the salon, the corporate office called Martinez. As a result, Martinez called Littlejohn and informed her that there must have been a misunderstanding because Littlejohn was not hired. Martinez testified that she asked Littlejohn to get her belongings and leave the premises.

Littlejohn filed a complaint with the Equal Employment Opportunity Commission within a week of the incident and thereafter filed this claim in district court. After a short trial encompassing the testimony of only three witnesses, the trial court, sitting without a jury, ruled in favor of Littlejohn and awarded her $107,123.50.[1] The trial court made the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Plaintiff is a black female.
2. Plaintiff applied for and was qualified for the position of manager of the Lincoln Square Shear Cuts in Arlington, TX.

3. Plaintiff suffered an adverse employment action because of her race, black.
4. Clear and convincing evidence showed that the Defendant acted with malice or reckless indifference to the rights of the Plaintiff when it engaged in the discriminatory employment practice.

## CONCLUSIONS OF LAW

1. The Defendant violated the Texas Commission on Human Rights Act and the Tex. Lab.Code, in that it discriminated against the Plaintiff because of her race, black.

Shear Cuts, in five points of error, appeals the trial court's judgment in favor of Littlejohn.

### LEGAL SUFFICIENCY

 In its first two points of error, Shear Cuts challenges the legal sufficiency of the evidence to support the trial court's judgment that Shear Cuts violated the Texas Commission on Human Rights Act (TCHRA) by discriminating against Littlejohn because of her race. In determining a "no-evidence" point, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex.2001); *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex.1996); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cazarez*, 937 S.W.2d at 450; *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex.1996). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the exis-

---

1. The total damage award is composed of $40,911 in lost wages, $50,000 for punitive damages, $8,712.50 in attorneys' fees, and $7,500 for appeals.

tence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex.2002).

■ A "no-evidence" point may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex.1998) (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361, 362–63 (1960)), *cert. denied*, 526 U.S. 1040, 119 S.Ct. 1336, 143 L.Ed.2d 500 (1999).

■ An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all of the evidence in the case in making this determination. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex.), *cert. denied*, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998).

■ In discrimination cases that have not been fully tried on the merits, we apply the burden-shifting analysis established by the United States Supreme Court. *Wal–Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex.2003). When a discrimination case has been fully tried on its merits, however, "[w]e need not parse the evidence into discrete segments corresponding to a prima facie case, an articulation of a legitimate, nondiscrimina-

tory reason for the employer's decision, and a showing of pretext." *Rutherford v. Harris County, Tex.*, 197 F.3d 173, 181 (5th Cir.1999) (quoting *Travis v. Bd. of Regents*, 122 F.3d 259, 263 (5th Cir.1997)). We instead, determine whether the evidence is sufficient to support the fact finder's ultimate findings. *Rutherford*, 197 F.3d at 180–81; *Canchola*, 121 S.W.3d at 739.

■ Under section 21.051 of the TCHRA,

An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:

(1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment.

TEX. LAB.CODE ANN. § 21.051(1) (Vernon 1996). The Texas Legislature modeled chapter 21 of the Texas Labor Code after federal law for the express purpose of carrying out the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments. *Id.* § 21.001(1); *see Soto v. El Paso Natural Gas Co.*, 942 S.W.2d 671, 677 (Tex.App.-El Paso 1997, writ denied); *Ewald v. Wornick Family Foods Corp.*, 878 S.W.2d 653, 658 (Tex.App.-Corpus Christi 1994, writ denied). Consequently, when reviewing an issue brought under chapter 21, we may look not only to cases involving the state statute, but also to cases interpreting the analogous federal provisions. *See Caballero v. Cent. Power & Light Co.*, 858 S.W.2d 359, 361 (Tex. 1993); *Elgaghil v. Tarrant County Junior Coll.*, 45 S.W.3d 133, 139 (Tex.App.-Fort Worth 2000, pet. denied).

■ In discrimination cases brought under the TCHRA, a prima facie case of

discrimination is made by showing plaintiff (1) is within a protected group, (2) was adversely affected or suffered an adverse employment action, and (3) similarly situated non-protected class members were not treated similarly. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 510, 122 S.Ct. 992, 996, 152 L.Ed.2d 1 (2002); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *M.D. Anderson Hosp. v. Willrich,* 28 S.W.3d 22, 24 (Tex.2000). In order to prove causation, plaintiffs must establish that race "was a motivating factor for an employment practice, even if other factors also motivated the practice, unless race ... is combined with objective job-related factors to attain diversity in the employer's work force." Tex. Lab.Code Ann. § 21.125(a) (Vernon Supp.2004); *Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 479–80 (Tex.2001).

Because Shear Cuts contends that it never hired Littlejohn, it recites a different list of elements required for establishing a prima facie case. Shear Cuts asserts that in order to establish a prima facie case of discrimination in the context of a denial of an employment position, a claimant must show that (1) she is a member of a protected class, (2) she applied for and was qualified for the position, (3) despite her qualifications, she was rejected, and (4) after she was rejected, the position remained open and the employer continued to seek applicants with the claimant's qualifications. *See Romo v. Tex. Dep't of Transp.,* 48 S.W.3d 265, 270 (Tex.App.-San Antonio 2001, no pet.). Littlejohn, however, does not contend that she was denied an employment position, she claims she was wrongfully terminated. Consequently, Littlejohn's burden is to establish the elements of *her* claim. Logically, if Shear Cuts did not hire Littlejohn, her claim fails as a matter of law. On the other hand, if Shear Cuts did hire Littlejohn, she was not required to prove that she was qualified for the job or that she was rejected for the position or that Shear Cuts continued to seek applicants with the same qualifications.

■ A review of the record demonstrates that the trial judge determined that Shear Cuts *did* hire, and subsequently fire, Littlejohn.[2] Thus, in order to properly address Shear Cuts' contention on appeal, we must first decide whether the evidence supports the trial court's determination that Shear Cuts hired Littlejohn. The only fact witnesses at the trial were Littlejohn and Shear Cuts' area supervisor, Martinez. Littlejohn testified that Martinez hired her, had her sign a W-2 form, and told her to report for work at 11:00 a.m. the following day. Martinez testified that after interviewing Littlejohn for the position, Martinez told Littlejohn she would call her regarding the hiring decision. Except for pictures of Littlejohn's supplies set up in one of Shear Cuts' styling stations, there is no other evidence regarding whether Shear Cuts hired Littlejohn. While Shear Cuts points out that no documentary evidence was produced to indicate that Littlejohn completed any employment forms such as a W-4 or an I-9, we note that Martinez also testified that she disposed of Littlejohn's application for employment.

■ In a bench trial, the trial court, as fact finder, is the sole judge of the credibility of the witnesses. *Munters Corp. v. Swissco-Young Indus., Inc.,* 100 S.W.3d 292, 296 (Tex.App.-Houston [1st

---

**2.** Although the trial court's findings of fact and conclusions of law resemble the prima facie elements advanced by Shear Cuts, just before finding in favor of Littlejohn, the trial court stated, "It makes more sense to me that the plaintiff was hired."

Dist.] 2002, pet. dism'd) (op. on reh'g). The trial court may take into account all the surrounding facts and circumstances in connection with the testimony of each witness and accept or reject all or any part of that testimony. *Id.* at 297. Here, the trial court, as fact finder, was free to disagree with Shear Cuts' characterization of the evidence and to conclude that Littlejohn was hired as a manager for its Arlington salon and later terminated by Martinez. Giving due deference to the trial court's findings on matters of weight and credibility, we cannot say that the evidence was so weak as to be clearly wrong. We therefore conclude that the trial court's determination that Shear Cuts hired and then fired Littlejohn is supported by the evidence. Consequently, to establish a prima facie case of discrimination under the TCHRA, Littlejohn was required to show that she was (1) within a protected group, (2) suffered an adverse employment action, and (3) similarly situated non-protected class members were not treated similarly. *Swierkiewicz,* 534 U.S. at 510, 122 S.Ct. at 996. Accordingly, we review the record to determine whether there is sufficient evidence that Shear Cuts terminated Littlejohn because she is African–American.

■ Because the record contains little proof beyond the testimony of Littlejohn and Martinez, the evidence before us is essentially a swearing match between the two parties. We will not reevaluate the weight and credibility of the evidence and therefore defer to the trial court's role as the exclusive judge of the credibility of the witnesses. *See Munters Corp.,* 100 S.W.3d at 296. Keeping this in mind, we find the evidence to be both legally sufficient to sustain the trial court's ultimate determination that Shear Cuts "discriminated against [Littlejohn] because of her race, black." We overrule Shear Cuts' first two points.

### DAMAGES

■ In its third point, Shear Cuts contends that the evidence is legally insufficient to support the award of $40,911 for lost wages from October 12, 2001 until the time of trial, September 10, 2003. The trial court has discretion to award back pay as equitable relief in a race discrimination lawsuit. TEX. LAB.CODE ANN. § 21.258(b)(1) (Vernon 1996). The correct measure of damages for lost wages is the amount of money the employee would have earned had she not been terminated, less the sum she did earn after termination. *Id.* § 21.258(c); *Goodman v. Page,* 984 S.W.2d 299, 305 (Tex.App.-Fort Worth 1998, pet. denied).

Shear Cuts, relying on *Ewald v. Wornick Family Foods Corp.,* claims that Littlejohn cannot recover lost wages beyond November 2001—the date that the Arlington Shear Cuts was sold to another party. 878 S.W.2d 653. *Ewald* was a Corpus Christi summary judgment case decided adversely against an employee who sued for sexual harassment, retaliatory discharge, assault and battery, and intentional infliction of emotional distress. *Id* at 655. In that case, the court held that an employee could not recover compensatory damages for the period of time following the closure of the employer's plant. *Id.* at 661.

Shear Cuts' case, however, is distinguishable from the situation in *Ewald.* Unlike *Ewald,* the instant case involves a trial on the merits decided in favor of the employee. Second, the record shows that in an attempt to resolve Littlejohn's claim, Shear Cuts offered her a position in another store. Thus, Shear Cuts failed to establish that Littlejohn would have been terminated, rather than transferred to another location, when the Arlington store was

sold. We hold that in recovering lost wages, Littlejohn is not restricted to that period of time before the Arlington store was sold. *See Haggar Apparel Co. v. Leal,* 100 S.W.3d 303, 313 (Tex.App.-Corpus Christi 2002, pet. filed); *Goodman,* 984 S.W.2d at 305. Therefore, the evidence was legally sufficient to support the trial court's award for lost wages. We overrule Shear Cuts' third point.

▆▆▆▆ In Shear Cuts' fourth and fifth points, it challenges the legal sufficiency of the trial court's $50,000 punitive damages award. Although section 21.2585(b) of the Texas Labor Code permits a court to award punitive damages, the employee must show that the employer engaged in a discriminatory practice with malice or with reckless indifference to the rights of an aggrieved individual. TEX. LAB.CODE ANN. § 21.2585(b) (Vernon Supp.2004). Malice has to be proved by clear and convincing evidence—the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 41.001(2), 41.003(a)(2), (b) (Vernon Supp.2004). The terms "malice" and "reckless indifference" pertain to the employer's subjective knowledge that it may be acting in violation of the law, not its awareness that it is engaging in discrimination. *Kolstad v. Am. Dental Ass'n,* 527 U.S. 526, 535, 119 S.Ct. 2118, 2124, 144 L.Ed.2d 494 (1999). The Texas Labor Code further limits the amount of punitive damages according to the employer's number of employees. *See* TEX. LAB.CODE ANN. § 21.2585(d). For example, punitive damages assessed against an employer with fewer than one hundred one employees may not exceed $50,000. *Id.* § 21.2585(d)(1).

The United States Supreme Court recently considered procedural and substantive constitutional limitations on a state's right to allow punitive damages in *State Farm Mutual Automobile Insurance Co. v. Campbell.* 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). In that case, the Supreme Court reinforced the three guideposts it established in *BMW of North America, Inc. v. Gore* for determining whether punitive damages are proper: 1) the degree of reprehensibility of the misconduct; 2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and 3) the difference between the punitive damages award and the civil penalties authorized or imposed in comparable cases. *Id.* at 419, 123 S.Ct. at 1520; *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 574–75, 116 S.Ct. 1589, 1598–99, 134 L.Ed.2d 809 (1996).

▆▆▆▆ "[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Campbell,* 538 U.S. at 419, 123 S.Ct. at 1521 (quoting *Gore,* 517 U.S. at 575, 116 S.Ct. at 1599). In determining reprehensibility, we consider 1) whether the harm caused was physical as opposed to economic, 2) whether conduct indicates an indifference to or a reckless disregard for the health or safety of others, 3) whether the target of the conduct had financial vulnerability, 4) whether the conduct involved repeated actions or was an isolated incident, and 5) whether the harm was the result of intentional malice, trickery, deceit, or mere accident. *Id.* at 419, 123 S.Ct. at 1521.

> The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect. It should be presumed a plaintiff has been made whole for his injuries by compen-

satory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.

*Id.*

After reviewing the sparse evidentiary record in light of the Supreme Court's five reprehensibility factors, we conclude that the evidence is insufficient to justify the imposition of punitive damages. First, despite Littlejohn's claim of emotional distress, she testified that she did not see any doctors or therapists for mental or physical injuries, indicating that most, if not all, of Littlejohn's damages were economic. Second, Shear Cuts' misconduct did not constitute a reckless disregard for the health or safety of others. Third, due to the extremely short duration of her employment, Littlejohn was no more financially vulnerable than she would have been had she not been hired by Shear Cuts. There was no evidence that Littlejohn quit or refused another job opportunity in reliance on her expected employment. In fact, Littlejohn testified that she voluntarily left her prior job with Fantastic Sams and was unemployed when she submitted her application for employment with Shear Cuts.

Fourth, and perhaps most instructive on the degree of reprehensibility, is a total lack of evidence indicating that this was anything other than an isolated event. Martinez testified that the three previous managers at the Arlington salon were African–American women and that Shear Cuts consistently employs minorities at all of its locations. Furthermore, Littlejohn testified that she knew an African–American woman who previously worked at the Arlington salon for a long period of time.

Finally, Littlejohn's own testimony fails to establish that Shear Cuts acted with intentional malice under the Supreme Court's reprehensibility factors or "engaged in a discriminatory practice with malice or with reckless indifference to the state-protected rights of an aggrieved individual" as required by section 21.2585 of the Texas Labor Code:

She [Martinez] said, I have bad news for you. And I said, I haven't been here long enough to do anything wrong. What's the problem? She said, Well, I'm going to have to let you go. I said, What did I do? She said, It's nothing that you did. And she was being very nice. She said, It's nothing that you did. She said, I'm sorry. I'm just going to have to let you go. The girls are very concerned about the fact that you're going to be doing black hair.... And they're concerned about that and they're going to walk out on me. And I said, Well, look, I don't understand. I said, Why? I said—I said, She didn't have a problem with me when I walk in. I said—but she said, Well, I'm sorry. She said, What else do you want me to do? Would you rather me have you on and lose my employees and my clients? I don't have a choice. I'm stuck. I said, This is not fair, you can't do this. And she said, Well, I'm sorry.

Because the trial court's award of punitive damages is not supported by clear and convincing evidence of malice, we sustain Shear Cuts' fourth and fifth points. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 41.003(b) (Vernon Supp.2004).

### CONCLUSION

We modify the trial court's judgment to delete the $50,000 award of punitive damages. We affirm the trial court's judgment as modified.