COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-04-326-CV

 

 

ROBERT HERBERT                                                               APPELLANT

 

                                                   V.

 

CITY OF FOREST HILL, TEXAS                                                 APPELLEE

 

                                              ------------

 

            FROM THE 67TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------








Appellant 
Robert Herbert, a former police chief of Appellee City of Forest Hill,
Texas, sued Appellee for unlawful employment practices.[1]  Appellant alleged that Appellee discriminated
against him when Appellee=s city manager decided to remove
him from the position of police chief and return him to the position of
sergeant.  He also claimed that he was
retaliated against for complaining about his removal from the position as
chief.  The trial court granted Appellee=s motion
for summary judgment.  On appeal,
Appellant challenges the summary judgment in Appellee=s
favor.  Because we hold that there is no
evidence in the summary judgment record of a pretext for discrimination and no
evidence that Appellee=s actions were causally related
to Appellant=s exercise of a protected
activity, we affirm the trial court=s
judgment.

I.  Facts
and Procedural History

Appellant is a black male who has been employed
with Appellee=s police force since 1986.  In 1994, after serving as sergeant for
approximately two years, he was appointed police chief.  Eight months later, David Vestal, a white
male, became Appellee=s city manager.  As city manager, he had hiring and firing
power over Appellant.  Vestal removed
Appellant from the position of police chief on August 21, 1998, and returned
him to his former rank as sergeant. 
After Appellant returned to the position of sergeant, he was denied
positions in an auto theft task force, as a field training officer, and on a
tactical team.  








Vestal appointed Coy Martin, a white male, to
serve as interim chief until Appellant was replaced.  Martin worked for Appellee for only one week
as an unpaid volunteer before removing himself from this office due to health
considerations.  Martin was temporarily
replaced by interim chief Gary Fowler, also a white male.  Appellant=s
permanent replacement was Samith Hill, a black male with twenty-seven years of
law enforcement experience who had most recently served as deputy chief of the
City of Fort Worth.

Appellant filed a Charge of Discrimination
against Appellee with the Equal Employment Opportunity Commission (EEOC) on
August 28, 1998, and later added allegations of retaliation.  On March 10, 1999, Appellant received a
Dismissal and Notice of Rights from the EEOC, which stated that the EEOC was Aunable
to conclude that the information obtained establishe[d] violations of the
statutes.@ 
Appellant then filed suit in district court. 








Appellant claimed that he performed his duties as
required and received high performance ratings from Vestal.  However, Vestal claimed that during the last
eight months of Appellant=s tenure as chief, several
officer complaints and his dissatisfaction about Appellant=s
performance led to Vestal=s decision to remove Appellant
from the position.  For instance, a
sergeant and another officer complained about an abusive rebuke the sergeant
received from Appellant in the presence of other personnel.  A detective from an independent law
enforcement agency investigated the incident and sustained the complaint
allegations, also noting Appellant=s lack
of cooperation by refusing to meet with him. 
In addition, Appellant failed to complete his department=s budget
proposal on time.  Appellant claimed that
because the submission deadlines were lax under Vestal=s
supervision, his failure to timely file the proposals was actually Vestal=s
fault.  Vestal also asserted that
Appellant failed to adequately supervise the animal control office, responded
unprofessionally to Vestal=s
directive for a police property room audit, and did not decrease the high
turnover rate in the department.  All of
these facts led to Vestal=s decision to remove Appellant
from the position of police chief. 
Vestal did not give Appellant a specific reason for this decision,
claiming that he did not want to hamper Appellant=s
advancement in the future.  Appellant
claimed that Vestal=s decision was racially
motivated.

Appellant also alleged that white employees were
treated differently in disciplinary matters. 
He asserted that Mike Duehring, a white director of public works, was
treated more favorably than Appellant regarding complaints of sexual harassment
filed against Duehring.  Appellant
further contended that the city council held him to different standards because
of his race.








In addition, Appellant claimed that after he was
returned to the sergeant position, he was retaliated against when Hill
continuously denied him assignments and positions for which he was
qualified.  He had requested and was
denied assignments to positions in an auto theft task force and as a field
training officer.  He also complained
that he was required to train with a white police officer who had less
experience than he did for the position of patrol officer and that Appellee
failed to pay him Atactical pay.@  With regard to the auto theft task force,
Hill responded that because of a manpower shortage, no officer was assigned to
the force.  Therefore, Appellant had not
been singled out for exclusion.  With
regard to the field training duty, Hill responded that field training is traditionally
performed by a person of lower rank than a sergeant so that a sergeant has more
time to supervise.  With regard to the
patrol assignment, Hill responded that he assigned Appellant to duty which
would make the best use of his rank and experience.  In addition, Hill asserted that Appellant had
not been assigned to patrol for a number of years, the white officer at hand
was the most qualified to train Appellant, and that the race of neither played
a role in this selection.  Finally, with
regard to the tactical pay allegation, Hill responded that Appellant was not
paid this type of assignment pay because he was not assigned to the tactical
team, as Hill put a hold an all tactical team assignments until he could assess
the expertise and training of the team.








On June 21, 2004, Appellee filed a motion for
summary judgment under both the no-evidence standard and the traditional
standard.  On July 16, 2004, the court
granted the motion without specifying the grounds.  Appellant filed a motion for new trial on
August 13, 2004, which was denied by operation of law.  Appellant appealed the summary judgment on
October 14, 2004.

On appeal, Appellant claims that the trial court
erred by granting Appellee=s motion
for summary judgment based on either the traditional summary judgment standard
or the no-evidence summary judgment standard. 

II. 
Standard of Review

After an adequate time for discovery, the party
without the burden of proof may, without presenting evidence, move for summary
judgment on the ground that there is no evidence to support an essential
element of the nonmovant's claim or defense.[2]  The motion must specifically state the
elements for which there is no evidence.[3]  The trial court must grant the motion unless
the nonmovant produces summary judgment evidence that raises a genuine issue of
material fact.[4]








We review the evidence in the light most
favorable to the party against whom the no-evidence summary judgment was
rendered.[5]  If the nonmovant brings forward more than a
scintilla of probative evidence that raises a genuine issue of material fact,
then a no-evidence summary judgment is not proper.[6]

When a party moves for summary judgment under
both rules 166a(c) and 166a(i), we will first review the trial court=s
judgment under the standards of rule 166a(i).[7]  If Appellant failed to produce more than a
scintilla of evidence under that burden, then there is no need to analyze
whether Appellee=s summary judgment proof
satisfied the less stringent rule 166a(c) burden.[8]


III.  Legal
Analysis

A. 
Discrimination








Under section 21.051 of the Texas Commission on
Human Rights Act (TCHRA), an employer commits an unlawful employment practice
if because of race the employer Afails or
refuses to hire an individual, discharges an individual, or discriminates in
any other manner against an individual in connection with compensation or the
terms, conditions, or privileges of employment.@[9]  The Texas Legislature modeled chapter 21 of
the Texas Labor Code after federal law for the express purpose of carrying out
the policies of Title VII of the Civil Rights Act of 1964 and its subsequent
amendments.[10]  Consequently, when reviewing an issue in a
proceeding brought under chapter 21, we may look not only to cases involving
the state statute, but also to cases interpreting the analogous federal
provisions.[11]








In discrimination cases brought under the TCHRA,
a prima facie case of discrimination is made by showing that the plaintiff (1)
is within a protected group, (2) was adversely affected or suffered an adverse
employment action, and (3) similarly situated nonprotected class members were
not treated similarly.[12]  In addition, in order to prove causation, the
plaintiff must establish that race Awas a
motivating factor for an employment practice, even if other factors also
motivated the practice, unless race . . . is combined with objective job‑related
factors to attain diversity in the employer's work force.@[13] 

After the plaintiff establishes a prima facie
case, the burden of production shifts to the employer to articulate legitimate,
nondiscriminatory reasons for any allegedly unequal treatment.[14]  After the employer articulates legitimate,
nondiscriminatory reasons, the burden shifts back to the plaintiff to prove
that the employer=s articulated reasons are a mere
pretext for unlawful discrimination.[15]  Although the burden of production shifts, the
burden of persuasion remains continuously with the plaintiff.[16]  








In its motion for summary judgment, Appellee
asserted that there is no evidence that its articulated reasons for removing
Appellant from his position as police chief were a mere pretext for unlawful
discrimination.   We agree.

Appellee asserted that Vestal=s
decisions were based on his assessment of Appellant=s job
performance.  Because Appellee produced a
nondiscriminatory reason for removing Appellee from the chief position, we analyze
whether there is any evidence of pretextual discrimination.  Proving Apretext
for discrimination@ requires the plaintiff to show
both that the reason for the employer=s action
was false and that discrimination was the real reason for the action.[17]  A plaintiff pursuing a claim under the TCHRA
must also Ashow that discrimination was a
motivating factor in an adverse employment decision.@[18]  A[A]n
employee's own subjective belief of discrimination, no matter how genuine,
cannot serve as the basis for judicial relief.@[19]  








Here, there is no evidence that race was a
motivating factor.  There is no evidence
that Vestal generally disliked blacks or that he ever made any
racially-motivated statements.  Although
Appellant argues the importance of Martin=s and
Fowler=s status
as white males, they were only temporary replacements.  Appellant=s
permanent replacement is black.  In
addition, that Duehring was not removed from his position for the sexual
harassment incident is not evidence of pretext. 
More favorable treatment of a person outside a protected class can be
used to show discrimination only if the circumstances are nearly identical.[20]  The Duehring incident was factually distinct
from the one at hand, as it was based on allegations of sexual harassment
rather than poor job performance.  In
addition, Vestal alleged that Deuhring was otherwise efficient at his job, had
a complaint-free administration of his department, and had a generally
professional demeanor.  There is no
evidence that Duehring was otherwise negatively perceived regarding his job
abilities, and Vestal claimed that he never lost confidence in Deuhring=s
commitment or ability to do his job.








Moreover, even an incorrect belief that an
employee=s
performance is inadequate constitutes a legitimate, nondiscriminatory reason
for an adverse employment action.[21]  Although Appellant claims that Vestal gave
him a Aglowing
performance evaluation,@ this evaluation was done on
January 5, 1998, over seven months before Vestal=s
decision to remove Appellant from the position of police chief.  As stated above, Appellee has cited many
job-related reasons for losing confidence in Appellant.  Loss of confidence caused by an employee=s job
performance has been held to be a legitimate nondiscriminatory reason.[22]  In addition, although an employee may show
that proffered reasons for the employment action were a pretext for
discrimination by establishing that the employer=s
reasons are unworthy of credence,[23]
Appellant has not done so.  The court=s role
in employment discrimination cases is not to second-guess every personnel
decision.[24]


We hold that Appellant has presented no evidence
showing that Appellee=s proffered reasons for removing
him as police chief and returning him to sergeant were false or that
discrimination was the real reason for the action; therefore, the trial court
did not err by granting summary judgment based on no-evidence grounds with regard
to Appellant=s discrimination claim. 

 








B. 
Retaliation








To establish a prima facie case of retaliation, a
plaintiff must show that 1) he engaged in a protected activity, 2) an adverse
employment action occurred, and 3) there was a causal connection between
participation in the protected activity and the adverse employment decision.[25]  Protected activities are listed in Section
21.055 of the Texas Labor Code, and include 1) opposing a discriminatory
practice, 2) making or filing a charge, 3) filing a complaint, or 4)
testifying, assisting, or participating in any manner in an investigation,
proceeding, or hearing.[26]   A plaintiff asserting a retaliation claim
must establish that, without his protected activity, the employer=s
prohibited conduct would not have occurred when it did.[27]  That is, the plaintiff must establish a Abut for@ causal
nexus between the protected activity and the employer's prohibited conduct.[28]  The plaintiff need not establish that the
protected activity was the sole cause of the employer=s
prohibited conduct.[29]  The burden then shifts in the same manner as
it does with regard to discrimination claims.[30]


In its motion for summary judgment, Appellee
argued that Appellant had no evidence that any of the decisions made by Hill
concerning tactical assignments, field training duty, and the auto theft task
force were causally related to Appellant=s
exercising a protected activity.  Without
addressing whether these actions constitute adverse employment actions, we hold
that there is no evidence that the activities were causally related to the
exercise of protected activity by Appellant.








After being informed of the alleged
discriminatory change in position, Appellant engaged in protected activity by
opposing the reassignment and filing charges with the EEOC and this
lawsuit.  However, he has offered no
evidence that but for his having engaged in this protected activity, he would
have received the desired assignments. 
Although Appellant asserts that he was highly qualified, Appellee has
asserted legitimate reasons for not placing Appellant in the positions.  Appellant simply alleges that the
retaliations were racially-based.  This
conclusory evidence does not show that the decisions were causally related to
his engaging in a protected activity.  
Thus, the trial court did not err by granting Appellee=s motion
for summary judgment on no-evidence grounds with regard to Appellant=s
retaliation claim.  Because summary
judgment was proper on the no-evidence grounds on both Appellant=s
discrimination and retaliation claims, we do not address whether summary
judgment was proper under traditional grounds.[31]

IV. 
Conclusion

The
trial court did not err by granting Appellee=s no-evidence motion for summary judgment.  Therefore, we overrule Appellant=s issues and affirm the
trial court=s judgment.

 

 

LEE
ANN DAUPHINOT

JUSTICE

PANEL A:   CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.

DELIVERED:  March 16, 2006











[1]See Tex. Lab. Code Ann. ' 21.051 (Vernon 1996).





[2]Tex. R. Civ. P. 166a(i).





[3]Id.; Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 207 (Tex. 2002).





[4]See Tex. R. Civ. P. 166a(i) & cmt.; S.W.
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002).





[5]King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003), cert. denied,
124 S. Ct. 2097 (2004); Johnson, 73 S.W.3d at 197; Morgan v. Anthony,
27 S.W.3d 928, 929 (Tex. 2000).





[6]Moore v. K Mart Corp., 981 S.W.2d 266, 269 (Tex. App.CSan
Antonio 1998, pet. denied).





[7] Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600
(Tex. 2004).  





[8]Id.





[9]Tex. Lab. Code Ann. ' 21.051(1); see Shear Cuts, Inc. v. Littlejohn, 141
S.W.3d 264, 269 (Tex. App.CFort Worth 2004, no pet.).





[10]See Tex. Lab. Code Ann. ' 21.001(1); Shear Cuts, 141 S.W.3d at 269.





[11]See Caballero v. Cent. Power & Light Co., 858 S.W.2d 359, 361 (Tex. 1993); Shear Cuts, 141
S.W.3d at 269.





[12]Shear Cuts, 141
S.W.3d at 269-70.





[13]Tex. Lab. Code Ann. ' 21.125(a) (Vernon Supp. 2005); Quantum Chem. Corp.
v. Toennies, 47 S.W.3d 473, 479‑80 (Tex. 2001); Shear Cuts, 141
S.W.3d at 270.





[14]McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973); Greathouse
v. Alvin ISD, 17 S.W.3d 419, 423 (Tex. App.CHouston [1st Dist.] 2000, pet. denied).  This burden-shifting analysis is applied in
discrimination cases that have not been fully tried on the merits.  Wal-Mart Stores v. Canchola, 121
S.W.3d 735, 739 (Tex. 2003).





[15]McDonnell Douglas, 411 U.S. at 804, 93 S. Ct. at 1825; Greathouse, 17 S.W.3d at
423.





[16]McDonnell Douglas, 411 U.S. at 803, 93 S. Ct. at 1825; Greathouse, 17 S.W.3d at
423.





[17]St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515, 113 S. Ct. 2742, 2752 (1993). 





[18]Quantum, 47 S.W.3d at 482. 





[19]Winters v. Chubb & Son, Inc., 132 S.W.3d 568, 576 (Tex. App.CHouston
[14th Dist.] 2004, no pet.) (quoting  Martin
v. Kroger Co., 65 F. Supp. 2d 516, 553 (S.D. Tex. 1999), aff=d, 224 F.3d 765 (5th Cir.
2000)). 





[20]See, e.g., Winters, 132 S.W.3d at 578.





[21]Id. (citing Little
v. Republic Ref. Co., 924 F.2d 93, 97 (5th Cir. 1991)).





[22]See Gold v. Exxon Corp., 960 S.W.2d 378, 383 (Tex. App.C Houston
[14th Dist.] 1998, no pet.). 





[23]Bowen v. El Paso Elec.
Co., 49
S.W.3d 902, 909 (Tex. App.CEl Paso 2001, pet. denied).





[24]Martin, 65 F. Supp. 2d at 553.





[25]Johnson v. Alcon Labs., Inc., No. 2‑03‑011‑CV, 2004 WL 456055,
at *3 (Tex. App.CFort Worth Mar. 11, 2004, no pet.) (mem. op.); Graves
v. Komet, 982 S.W.2d 551, 554 (Tex. App.CSan Antonio 1998, no pet.).





[26]Tex. Lab. Code Ann. ' 21.055 (Vernon 1996). 





[27]Johnson,
2004 WL 456055, at *3; McMillon v. Tex. Dep't of Ins., 963 S.W.2d 935, 940 (Tex. App.CAustin 1998, no pet.). 





[28]Johnson,
2004 WL 456055, at *3; McMillon, 963 S.W.2d at 940.





[29]Johnson,
2004 WL 456055, at *3; McMillon, 963 S.W.2d at 940.





[30]See, e.g., Johnson, 2004 WL 456055, at
*3.





[31]See Tex. R. App. P. 47.1.