

# NUMBER 13-09-00646-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

## IN THE INTEREST OF S.W., A CHILD

---

**On appeal from the 444th District Court
of Cameron County, Texas.**

---

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Wittig[1]**

James Werbiski, appellant, challenges the trial court's grant of grandparent's visitation rights to Milena Perea, appellee. In three issues, Werbiski contends the trial court abused its discretion by allowing possession and access to Perea because: (1) Perea did not over-come the presumption that a parent acts in the best interest of the child; (2) there was no evidence that a parent of the child had been found to be

---

[1] Retired Fourteenth Court of Appeals Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to the government code. *See* TEX. GOV'T CODE ANN § 74.003 (West 2005).

incompetent; and (3) lack of sufficient evidence that E.O., the mother, did not have actual possession or access to the child.

## I. BACKGROUND

Appellee, Perea, is the grandmother of the child S.W., and the mother of E.O. Werbiski was the common law husband of E.O. E.O. was hospitalized October 17, 2008, after being unable to drive a vehicle and becoming disorientated. She suffered an aneurysm or stroke. After nearly three months in the hospital, E.O. was transferred to Ebony Lake Nursing Home and thereafter to Medford Assisted Living Nursing Home. At the time of trial, E.O. was not able to walk, her right arm was paralyzed, and most of her right side was paralyzed. She could not walk, bathe, or change. She was unable to speak except for a few words, like "yes" or "no," or "I don't know." Most of her answers were "I don't know." Werbiski did not know if E.O. recognized him or not.

Werbiski stated he was denied the right to make decisions for E.O. at the hospital. He testified that E.O. did not want to live under her conditions but that he was denied the right to make any decisions for her. However, Dr. Tina Briones informed Werbiski that he could make decisions for E.O.

S.W. was born May 29, 2007. She suffers from West Syndrome, a precarious and touchy illness, according to Werbiski. The disease is a neurological disorder causing spasms or seizures. Her condition is addressed by daily medication.

The trial court granted Perea limited access and possession to S.W. from 11:00 a.m. to 4:00 p.m. on Tuesdays and Thursdays of the first and third weeks of each month. At these times, Werbiski is at work, and he would otherwise leave S.W. at a

child-care facility. Perea's possession and access was limited to Cameron County and other members of Perea's family could not be present except for her spouse and the mother of the child.

## II. STANDARD OF REVIEW

We review a trial court's order granting grandparent access for an abuse of discretion. *In re Derzapf*, 219 S.W.3d 327, 333 (Tex. 2007) (orig. proceeding) (per curiam). A trial court abuses its discretion when it grants access to a grandparent who fails to meet the statutory requirements. *Id.* Although the grandparent access statute does not specifically include a best interest analysis, section 153.002 of the family code dictates that the best interests of the child shall always be the primary consideration when determining conservatorship, possession, and access issues. *See* TEX. FAM. CODE § 153.002 (West 2008); *In re J.P.C.*, 261 S.W.3d 334, 335-36 (Tex. App.–Fort Worth 2008, no pet.) A trial court is given "wide latitude in determining the best interests of a minor child." *Stallworth v. Stallworth*, 201 S.W.3d 338, 347 (Tex. App.–Dallas 2006, no pet.) (quoting *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)).

An abuse of discretion does not occur if some evidence of substantive and probative character exists to support the trial court's decision. *J.P.C.*, 261 S.W.3d at 336. However, a trial court has no discretion in determining what the law is or applying the law to the facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). Therefore, discretion is abused when the court grants access to a grandparent who fails to meet the statutory requirements of section 153.433. *J.P.C.*, 261 S.W.3d at 336; *see In re B.N.S.*, 247 S.W.3d 807, 808 (Tex. App.–Dallas 2008, no pet.). As the finder of fact for

the proceeding, the trial court is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Shear Cuts, Inc. v. Littlejohn*, 141 S.W.3d 264, 270-71 (Tex. App.–Fort Worth 2004, no pet.).

The trial court may order reasonable possession of or access to a grandchild by a grandparent if:

> (1) at the time the relief is requested, at least one biological or adoptive parent of the child has not had that parent's parental rights terminated;
>
> (2) the grandparent requesting possession of or access to the child overcomes the presumption that a parent acts in the best interest of the parent's child by proving by a preponderance of the evidence that denial of possession of or access to the child would significantly impair the child's physical health or emotional well-being; and
>
> (3) the grandparent requesting possession of or access to the child is a parent of a parent of the child and that parent of the child:
>
>> (A)  has been incarcerated in jail or prison during the three-month period preceding the filing of the petition;
>>
>> (B) has been found by a court to be incompetent;
>
> (C) is dead; or
>
> (D) does not have actual or court-ordered possession of or access to the child.

TEX. FAM. CODE ANN. § 153.433 (West 2008).

Review of the legal and factual sufficiency of the evidence in a possession or access case is subsumed into the abuse of discretion review. *In re Marriage of Hale*, 975 S.W.2d 694, 697 (Tex. App.–Texarkana 1998, no pet.); *Doyle v. Doyle*, 955 S.W.2d 478, 479 (Tex. App.–Austin 1997, no pet.). Accordingly, legal and factual insufficiency are not independent grounds of error, but are relevant factors in assessing whether the

4

trial court abused its discretion. *Doyle*, 955 S.W.2d at 479. Where sufficiency review overlaps with the abuse of discretion standard, the reviewing court engages in a two-pronged inquiry. *Sandone v. Miller-Sandone*, 116 S.W.3d 204, 206 (Tex. App.–El Paso 2003, no pet.). First, the court determines whether the trial court had sufficient information upon which to exercise its discretion. *Id.*; *see also In re W.M.*, 172 S.W.3d 718, 725 (Tex. App.–Fort Worth 2005, no pet.). Second, the appellate court evaluates whether the trial court erred in applying its discretion. *Sandone*, 116 S.W.3d at 206; *In re T.D.C.*, 91 S.W.3d 865, 872 (Tex. App.–Fort Worth 2002, pet. denied). With regard to the second question, we determine, based on the evidence, whether the trial court made a reasonable decision. *W.M.*, 172 S.W.3d at 725; *T.D.C.*, 91 S.W.3d at 872.

## III. RECORD EVIDENCE

Perea testified she was a widow and later remarried. She stated that her daughter E.O. was in a "very dire situation." E.O. had undergone surgery to replace bone on her head. E.O. was incapable of caring for S.W. Prior to the October 2008 stoke suffered by E.O., Werbiski and E.O. would leave S.W. with Perea on weekends. Both of S.W.'s parents entrusted S.W. to her and Werbiski trusted her "100%." Perea testified she took good care of S.W. After the stroke, Perea stated she was denied access to S.W. except for a visit in the hospital with E.O. in December 2008, and five minutes in April 2009, when she visited her daughter at the nursing home. Werbiski refused to speak with her and had his phone number changed.

Perea stated S.W. missed her and that she was the child's only grandmother. Because she was retired, she could spend all of her time with the child. She could give the child much love that only a grandmother could. She told the court:

> [E]ventually the little girl is going to know "'Why I don't have a grandma: What is the reason? Why grandma doesn't want me? What is this?" This is what I worry for the little girl.

Perea stated that there are no court orders regarding the child, that E.O. does not have actual possession of S.W., and that the child would suffer significant impairment of her emotional well being if Perea were denied access to S.W. S.W.'s mother could not care for her, although Perea stated that no judge had found her daughter incompetent. She stated the best interests of the child would allow her visitation so the child could come to her house and run around in it. "She have—we give her so much love. Mentally it's just the love that I want to give her because that's the only gramma she have, me." Perea introduced a photo showing herself and her granddaughter together before the stroke.

Perea admitted that her son James was verbally abusive and bruised his children, and that his ex-wife had her parental rights terminated. Based upon unarticulated hearsay, Werbiski testified that James's eleven-year-old boy may have molested his nine year old sister. Werbiski indicated he was mainly worried about James, who may have physically abused his own children. He requested supervised visitation and no over-night stays with Perea.

On recall, Perea testified she had back problems in the past when she worked six days a week with her husband at a body shop. She has since retired and has no

6

current medical problems, except high blood pressure which is controlled by medication. She can lift twenty-six pounds or S.W. Perea is aware of S.W.'s medical problems and has medicated her in the past. She denied Werbiski's accusation that she lied about S.W. spending weekends with her prior to E.O.'s hospitalization. She recalled one time that Werbiski and her daughter left S.W. with her for a week. Addressing the possible available emergency medical care of S.W., Perea recalled one time she called an ambulance and it was there in five minutes.

Werbiski testified that no one truly knows what E.O. knows and understands and what she does not. Brain damage has affected her speech as well as her recall and memory. She cannot shower or change. E.O. is on medicaid and social security.[2]

Werbiski testified that when Werbiski and E.O. would offer to take S.W. to see Perea, Perea would refuse the visit, sometimes complaining of back problems. Werbiski did not know if it would benefit S.W. to see her grandmother. Werbiski testified that S.W. also has one paternal grandfather. Werbiski indicated his phone had been disconnected and that he was filing for bankruptcy. Werbiski admitted that Adult Protective Services had called on him because of E.O. Perea initially signed E.O. into the hospital, but Werbiski eventually signed her into the nursing home. Werbiski was concerned that E.O.'s wishes for no heroic intervention be honored, and he called Perea a "liar" in answer to his attorney's inquiries suggesting such an answer.

On recall, Werbiski testified that S.W.'s best doctor was in San Antonio. He didn't know the proximity of hospitals to Perea and her husband, but doubted they were close.

---

[2] Given E.O.'s age and condition, her social security payments are presumably for disability.

Daniel Gomez, a deputy director of County Supervision and Corrections, did no investigation of the parties or their families. He opined hypothetically that S.W. should not be allowed to be with a nine-year-old sexual predator.[3] Again, hypothetically, he also opined that it would not be a bad thing for a grandmother to have access to her grandchild.

Melissa Werbiski, the sister of appellant, testified that S.W. sometimes had trouble with her medication. The child was once hospitalized for three days because she could not keep her medication down. The child could have over one-hundred seizures in a matter of hours. Melissa expressed concern whether Perea would be vigilant about the child's seizures. She volunteered to help find supervisors for visitations with Perea. Melissa did not know how S.W.'s child-care facility would deal with the child's seizures. She only observed actual seizures one time.

In closing argument, counsel for appellant admitted: "And there is no question but that Petitioner wants to be a loving grandmother. That is not being argued here. That's not being disputed."

## IV. ANALYSIS

### A. PARENTAL PRESUMPTION

Werbiski does not argue that the trial court lacked sufficient information upon which to exercise its discretion. *See Sandone*, 116 S.W.3d at 206. Therefore, we address whether the trial court abused its discretion by awarding grandparent access.

---

[3] Presumably, this characterization alludes to James's son, variously described as being nine or eleven years old.

Werbiski first argues that Perea did not overcome the presumption that a fit parent acts in the best interest of his child. Section 153.433(2) requires that a grandparent seeking court-ordered access overcome the presumption that a parent acts in his or her child's best interest by proving by a preponderance of the evidence that "denial . . . of access to the child would significantly impair the child's physical health or emotional well-being." *Derzapf*, 219 S.W.3d at 333 (citing TEX. FAM. CODE ANN. § 153.433(2)). A trial court abuses its discretion when it grants access to a grandparent who has not met this standard because "[a] trial court has no 'discretion' in determining what the law is or applying the law to the facts[,] even when the law is unsettled." *Id.* (citing *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135, (Tex. 2004)). However, in *Derzapf*, grandparent Connie relied upon the testimony of Dr. Otis. The supreme court noted:

> According to Dr. Otis, '[t]he manner in which she resisted the children transitioning to [Ricky's] full-time care interfered with the children's emotional and behavioral adjustment.' He also concluded that Connie actively attempted to alienate B.G.D. from his father and that her behavior was "very damaging" to the parent-child relationship. Moreover, while Dr. Otis noted the children's "sadness" at being unable to see their grandparents, he admitted that these feelings did not rise to the level of a significant emotional impairment.

*Id.* at 333. Thus, *Derzapf* is clearly distinguished on the facts. Here, even Werbiski's expert, Gomez, conceded that it was not bad for Perea to have access to S.W. The trial court found that prior to her stroke/medical incapacity, Perea maintained a close relationship with her daughter E.O. and granddaughter S.W. Werbiski would entrust his daughter to Perea. After the stroke, Werbiski denied Perea access to her granddaughter. Implicitly, by denying Perea access to her granddaughter, he was

9

contemporaneously denying S.W.'s access to her grandmother. The court further found:

> The credible evidence presented by Petitioner Milena Perea regarding the warm, loving, and very close bond and relationship that existed between herself, her daughter E.O., and her granddaughter S.W., prior to E.O.'s stroke and medical incapacity, combined with the factually unsubstantiated and arbitrary decision by James Werbiski to deny Petitioner access to her granddaughter, overcame the legal presumption that a parent acts in the best interest of his/her child.

The trial court avoided any interference with Werbiski's possession of S.W. and noted that Werbiski delivered the child each day to child care at 10:00 a.m. until 4 p.m., when his sister would pick up S.W. Werbiski would then not arrive home from work until 5:00 p.m. The court found that allowing possession and access between 11:00 a.m. and 4:00 p.m. for two days out of the first and third week of each month is in the best interest of the child. The court went on to legally conclude that the evidence supported a finding, by a preponderance of the evidence, that denial of possession of or access to the child by the maternal grandmother would significantly impair the child's physical heath or emotional well-being. We note that the trial court granted Werbiski's request for no overnight visitation. The trial court's order also addressed Werbiski's stated problems with Perea's son, James, and his allegedly troublesome son. The court denied any participation in access or visitation by these two individuals, who were not parties to the action. Only Perea, her husband, and the child's mother, could be present during access times.

From the evidence adduced, the trial court could have reasonably concluded that S.W.'s health and emotional well-being would be significantly impaired by denial of

10

access. S.W. had previously stayed weekends, and as long as a week with Perea and her husband. It appears that the trial court considered this close relationship in making a decision regarding access. It was within the court's realm of discretion to infer that a permanent break in a close familial relationship would seriously affect S.W.'s emotional well-being. Further, the trial court could have decided that the deprivation of love, care, and affection from one-half of the child's family would cause significant impairment to the child's emotional well-being.

After two days of testimony, the trial court was well aware that Perea was S.W.'s only living grandmother. S.W. had only one grandparent on each side of the family. On her maternal side, she has a mother who "exists" in a full care facility in a "very dire situation." Thus, Perea is the only fully functioning member of S.W.'s maternal side of the family. The trial judge, or any rational fact-finder, could reasonably determine significant harm to the emotional well being to a young girl when she is cut off from the mother's side of the family. E.O. was incapable of caring for S.W. and is mentally and physically impaired. S.W. missed her only grandmother. The trial court could also reasonably infer the child wanted to spend time with her grandmother at her house, where she could run and play in a loving maternal atmosphere. The trial court specifically found that the "unsubstantiated and arbitrary decision" by Werbiski to deny Perea access overcame the presumption a parent acts in the best interest of his child. *Cf. Troxel v. Granville*, 530 U.S. 57, 68-74 (U.S. 2000) ("Finally, we note that there is no allegation that Granville ever sought to cut off visitation entirely. Rather, the present dispute originated when Granville informed the Troxels that she would prefer to restrict

11

their visitation with Isabelle and Natalie to one short visit per month and special holidays.")

The trial court noted before his decision that Perea sought access and yet, at the same time, Werbiski stated he was not denying access. However, Werbiski refused to talk with Perea to reach any accommodation. Even on at least two occasions when the trial court invited the parties to discuss some accommodation, Werbiski refused. This refusal is consistent with Perea's testimony that Werbiski refused to communicate with her about S.W. or allow her access.

It is clear from the trial court's comments that its focus included the best interest of the child pursuant to the court's duty under the family code. *See* TEX. FAM. CODE ANN. § 153.002. ("The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child."). We note that the trial court did not give Perea unlimited or even overnight visitation with S.W. Rather, it only allowed Perea to see S.W. on parts of two days, the first and third weeks of each month, a total of twenty hours per month. During these hours, Werbiski is not in possession of the child and would otherwise leave S.W. at child-care. Further, the trial court specifically interlineated a safeguard into the order that provides that Perea cannot remove the child from Cameron County, and cannot have any other family members around S.W. except for herself, her spouse, and the child's mother. Thus, Werbiski's specific concerns about James and his children were specifically addressed.

12

E.O.'s various incapacities denied the normal relationship and access between S.W. and her mother. Two of S.W.'s grandparents were dead. The result left S.W. with her father, his father, and one grandmother, Perea. The trial judge could rationally conclude that to deny S.W. access to her only fully functional female blood relative would significantly impair the child's emotional well-being.

An extended number of factors have been considered by the courts in ascertaining the best interest of the child. *See Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). Included among the factors are the following: (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent. *Id.*

The record evidence supports the trial court's finding of best interest of the child under *Holley* subparts A, B, C, F, G, and H. *Id.* Nor do we see where Werbiski challenged the trial court's finding that the ordered possession and access by Perea is in the best interest of the child. When findings of fact are filed and are unchallenged, they occupy the same position and are entitled to the same weight as the verdict of a jury; they are binding on an appellate court unless the contrary is established as a

13

matter of law or there is no evidence to support the finding. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986).

We determine, based on the record, that the trial court made a reasonable decision based upon sufficient evidence and did not abuse its discretion. *See W.M.*, 172 S.W.3d at 725; *T.D.C.*, 91 S.W.3d at 872. We overrule Werbiski's first issue.

### B. INCOMPETENCE

Werbiski notes the trial court made no finding that a parent of the child had been found by a court to be incompetent. Perea argues that E.O. is de facto incompetent and that the trial court's finding of medical incapacity is legally equivalent to a court finding of incompetence. We do not agree. Our review of the record indicates the trial court carefully crafted its factual findings. Because no court, including the trial court, found E.O. incompetent, section 153.433(b)(3)(B) of the family code is not satisfied and could not be a ground for grandparent possession or access to a grandchild. *See* TEX. FAM. CODE ANN. § 153.433(b)(3)(B). However, we fail to see how this non-finding constitutes an abuse of discretion by the trial court.

### C. ACCESS

Werbiski also attacks the trial court's finding that the biological mother, E.O., does not have actual or court-ordered possession of or access to S.W. It is undisputed that E.O. does not have actual or court-ordered possession of S.W. The only question is access. In support of his argument, Werbiski points to two instances in the record. In the first incident, Werbiski testified: "I had my sister with me because it was difficult for me to get E.O.–push E.O. out and make sure that S.W. was okay because, I mean,

14

she's two." He described that S.W., then a year and a half, just learned to walk and run, so she would run everywhere. The only time he could take S.W. to see E.O. was when somebody would go with him to keep an eye on S.W. The second instance referred to by Werbiski is the cross-examination of Perea where she testified she saw S.W. for five minutes at one of the nursing homes. Werbiski cites no legal authority for his argument.

The family code does not define the terms "possession" and "access." *E.C. v. Graydon*, 28 S.W.3d 825, 831 (Tex. App.–Corpus Christi, 2000 no pet.). When a statute does not define a term, we apply the term's ordinary meaning. *Id.* (citing *Hopkins v. Spring Indep. Sch. Dist.*, 736 S.W.2d 617, 619 (Tex. 1987)); *Alexander v. State*, 803 S.W.2d 852, 855 (Tex. App.–Corpus Christi 1991, writ denied); *see also* TEX. GOV'T CODE ANN. § 311.011 (West 2008). We consult generally accepted sources for common and legal definitions of words. *Graydon,* 28 S.W.3d at 831. In *Graydon*, we held that access means: freedom of approach or communication; or the means, power, or opportunity of approaching, communicating or passing to and from . . . "Access" to property does not necessarily carry with it possession. *Id.* (citing BLACK'S LAW DICTIONARY 13 (6th ed. 1990)).

The trial court's finding that E.O. is incapacitated is unchallenged by Werbiski or the record. S.W.'s mother is in a dire situation and even Werbiski cannot say that E.O. recognizes him. She cannot walk and gets around, according to Werbiski, when someone pushes her in a wheelchair. She was hospitalized some three months for a stroke and remains confined to a nursing home. The trial court specifically found:

> Because of a serious brain related medical condition, a form of brain stroke, the biological mother is incapable of caring for herself or tending to

her own physical needs, and she is living in an assisted care facility in Cameron County, Texas where she remains medically incapacitated.

Again, this finding is not challenged by Werbiski, nor is there any evidence in the record to the contrary. The record demonstrates that E.O. does not enjoy freedom of approach or communication. Applying the appropriate abuse of discretion standard to the trial court's finding that E.O. does not have actual or court-ordered possession of or access to S.W., we find no abuse of discretion. See *Derzapf*, 219 S.W.3d. at 333. We overrule this issue.

## V. Conclusion

The judgment of the trial court is affirmed.

DON WITTIG,
Justice

Delivered and filed the
30th day of June, 2011.