COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-06-176-CV

 

 

JACKIE COLLINS                                                                 APPELLANT

 

                                                   V.

 

TARRANT APPRAISAL DISTRICT                                              APPELLEE

 

                                              ------------

 

           FROM
THE 236TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

This is a religious
discrimination case.  Appellant Jackie
Collins appeals from a summary judgment and an award of attorney=s fees and costs granted in favor of her former employer, Appellee
Tarrant Appraisal District (Athe District@).  We affirm.

 








I.                  
Background

Collins sued the District for religious
discrimination, alleging that the District wrongfully failed to make reasonable
accommodations and terminated her employment when Collins refused to submit a
hair sample for drug testing because to cut her hair would violate her
religious beliefs as an adherent of the Pentecostal faith.  The following evidence is relevant to her
claims and the District=s
summary judgment motion.

Collins was hired by the District in 1996.  In December 2003, the District received an
anonymous letter alleging that Collins and two other employees were using
drugs.  Three District officialsCCheryl Curry, Stuart Bach, and John
MarshallCquestioned
Collins about the allegation.  Collins
denied that she was using drugs. 

Bach asked Collins to sign a consent form for Aa screening test for illegal drugs,
illegally used drugs and/or alcohol which entails the collection of urine,
hair, and other necessary medical tests.@  Collins inquired what they wanted her to do,
and Marshall told her that they just wanted her to submit a urine sample.  Collins signed the form, went to a testing
lab, and submitted a urine sample for analysis. 
The drug test came back negative. 









In February 2004, after one of the other accused
employees tested positive for drugs, Curry, Bach, and Marshall presented
Collins=s
previously-signed drug-test consent form to her and asked her to submit a hair
sample for additional testing.  When
Collins refused, Curry, Bach, and Marshall told her she would be terminated. 

With regard to what she told Curry, Bach, and
Marshall when she refused to give a hair sample, Collins testified,

And
I told them that I couldn=t
cut my hair.  I said AI don=t
cut my hair, and you know I don=t
cut my hair and never have the whole time I=ve
worked here, and I=m not
going to allow you to cut it.@ 
. . . I told John [Marshall] that I felt like I was being
discriminated against; my civil rights were being violated.  I told John that I wanted to seek the advice
of an attorney.  And he said, AI think that would be a good idea.@ 

 

Similarly, Marshall testified that Collins said, AI=m
not going to let someone cut my hair and you=re
violating my constitutional rights,@
and Bach likewise testified that Collins said the test was Aunconstitutional and invasive.@ 
Collins concedes that she did not, during that conversation, tell Curry,
Bach, and Marshall that she was Pentecostal or that cutting her hair would
violate her religious beliefs, nor did she even mention the words Areligion@
or Areligious.@  She further concedes that she never had a
conversation with either Marshall or Bach about her beliefs as a Pentecostal
generally and hair cutting specifically. 
Curry, on the other hand, testified that she knew Collins was
Pentecostal:

A.        [I]f she had said something about not
wanting us to cut her hair, I=m
absolutely positive it would have triggered something, in my awareness, about
how she felt about her hair.








Q.        You knew that Ms. Collins didn=t cut her hair because she was
Pentecostal?

 

A.        I knew she was Pentecostal, and I knew
that she had cut her hair previously.

 

Q.        But you knew that Ms. Collins didn=t regularly cut her hair because she
was Pentecostal?

 

A.        She did cut her hair.  I saw her hair cut.  But if she had said something that was along
the lines of Athis is a
religious objection,@
we would have stopped it and taken a hair sample from a different place.

 

Q.        I=m
going back to your previous knowledge about Ms. Collins=s
hair.  You perceived that she cut her
hair less than other people, right?

 

A.        She cut her hair less than other people,
yes.  She had long hairChas long hair.

 

Q.        And you understood this to be because she was Pentecostal?

 

A.        I know that it was part of her--

 

[Objection
omitted]

 

A.        I knew her hair was long because she was Pentecostal.

 

Q.        What did you know about the Pentecostal
beliefs regarding cutting hair?

 

A.        Some people cut their hair and some
people don=t in the
Pentecostal church.

 

Q.        But you were aware that there were some
people in the Pentecostal church who chose not to cut their hair?

 








A.        I know Pentecostal woman [sic] a lot of
times have long hair.  I don=t know the details of their belief
system. 

 

Ultimately, Collins refused to submit a hair
sample, and the District terminated her for insubordination. 

After receiving a right-to-sue letter from the
Texas Workforce Commission, Collins sued the District for religious
discrimination under chapter 21 of the labor code.  See Tex.
Lab. Code Ann. ' 21.051
(Vernon 2006).  The District filed an
answer and a counterclaim seeking attorney=s
fees and court costs because APlaintiff=s claims lack merit and are brought in
bad faith.@  Eighteen months later, the District filed a
combined traditional and no-evidence motion for summary judgment.  The trial court granted the motion and
eventually awarded the District $27,849 in attorney=s
fees and $4,651 in court costs.  Collins
filed this appeal. 

II.               
Summary Judgment

In her first two issues, Collins argues that the
trial court erred by granting summary judgment because genuine issues of
material fact exist as to (1) whether the District knew that cutting
Collins=s hair
conflicted with her religious belief and (2) whether she was sincere in her
religious belief. 

 

 








A.               
Standard of Review

Under the traditional summary
judgment rules, a defendant who conclusively negates at least one essential
element of a cause of action is entitled to summary judgment on that
claim.  IHS Cedars Treatment Ctr. of
Desoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004); see
Tex. R. Civ. P. 166a(b),
(c).  When reviewing a summary judgment,
we take as true all evidence favorable to the nonmovant, and we indulge every
reasonable inference and resolve any doubts in the nonmovant=s favor.  IHS Cedars
Treatment Ctr., 143 S.W.3d at 798. 

Under the no-evidence summary
judgment rules, after an adequate time for discovery, the party without the
burden of proof may, without presenting evidence, move for summary judgment on
the ground that there is no evidence to support an essential element of the
nonmovant=s claim or
defense.  Tex. R. Civ. P. 166a(i). 
The motion must specifically state the elements for which there is no
evidence.  Id.; Johnson v. Brewer
& Pritchard, P.C., 73 S.W.3d 193, 207 (Tex. 2002).  The trial court must grant the motion unless
the nonmovant produces summary judgment evidence that raises a genuine issue of
material fact.  See Tex. R. Civ. P. 166a(i) & cmt.; Sw.
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002).








When reviewing a no-evidence
summary judgment, we examine the entire record in the light most favorable to
the nonmovant, indulging every reasonable inference and resolving any doubts
against the motion.  Sudan v. Sudan,
199 S.W.3d 291, 292 (Tex. 2006).  If the
nonmovant brings forward more than a scintilla of probative evidence that
raises a genuine issue of material fact, then a no-evidence summary judgment is
not proper.  Moore v. K Mart Corp.,
981 S.W.2d 266, 269 (Tex. App.CSan Antonio 1998, pet. denied). 

When a party moves for
summary judgment under both rules 166a(c) and 166a(i), we will first review the
trial court=s judgment
under the standards of rule 166a(i).  Ford
Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004).  If the appellants failed to produce more than
a scintilla of evidence under that burden, then there is no need to analyze
whether appellee=s summary
judgment proof satisfied the less stringent rule 166a(c) burden.  Id.

B.                
Analysis








Under Texas Labor Code
section 21.051, an employer commits an unlawful employment practice if because
of religion, the employer Afails or refuses to hire an individual, discharges an individual, or
discriminates in any other manner against an individual in connection with
compensation or the terms, conditions, or privileges of employment.@  Tex. Lab. Code Ann. ' 21.051(1).  The Texas
Legislature modeled chapter 21 of the Texas Labor Code after federal law for
the express purpose of carrying out the policies of Title VII of the Civil
Rights Act of 1964 and its subsequent amendments.  Id. ' 21.001(1); Herbert v. City of Forest Hill, 189 S.W.3d
369, 374 (Tex. App.CFort Worth
2006, no pet.); Shear Cuts, Inc. v. Littlejohn, 141 S.W.3d 264, 269
(Tex. App.CFort Worth
2004, no pet.).  Consequently, when
reviewing an issue brought under chapter 21, we may look not only to cases
involving the state statute, but also to cases interpreting the analogous
federal provisions.  Caballero v.
Cent. Power & Light Co., 858 S.W.2d 359, 361 (Tex. 1993); Herbert,
189 S.W.3d at 374-75; Shear Cuts, Inc., 141 S.W.3d at 269.








The United States Supreme
Court has prescribed a shifting burden of proof in employment discrimination
cases.  See McDonnell Douglas Corp. v.
Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25 (1973); Wal-Mart
Stores, Inc. v. Canchola, 121 S.W.3d 735, 739 (Tex. 2003).  At the outset, the employee has the burden of
establishing a prima facie case of unlawful discrimination.  Tex. Dep=t of Human Servs. of State of Tex. v. Hinds, 904 S.W.2d 629, 636 (Tex. 1995). 
A plaintiff bringing a religious discrimination claim under labor code
chapter 21 makes a prima facie case by establishing three elements:  (1) the plaintiff has a bona fide religious
belief that conflicts with an employment requirement, (2) the plaintiff
informed the employer of this belief, and (3) the plaintiff suffered an adverse
consequence for failure to comply with the conflicting employment
requirement.  Grant v. Joe Myers
Toyota, Inc., 11 S.W.3d 419, 422‑23 (Tex. App.CHouston [14th Dist.] 2000, no pet.).

The second prima facie
element Arequire[s] only enough information about an employee=s religious needs to permit the employer to understand the existence
of a conflict between the employee=s religious practices and the employer=s job requirements.@  Heller v. EBB Auto Co.,
8 F.3d 1433, 1439 (9th Cir. 1993) (holding employee=s request to miss sales meeting and attend religious ceremony was
sufficient information to apprise supervisor of conflict) (citing Redmond v.
GAF Corp., 574 F.2d 897, 902 (7th Cir. 1978) (holding employee=s statement informing employer that AI [am] not able to work on Saturday because of my religious obligation@ was sufficient)).








But knowledge that an
employee has strong religious beliefs does not place an employer on notice that
she might engage in any particular religious activity.  Chalmers v. Tulon Co. of Richmond, 101
F.3d 1012, 1020 (4th Cir. 1996), cert. denied, 522 U.S. 813 (1997)
(holding employee=s notoriety
as an evangelical Christian did not inform employer of her alleged religious
need to send personal, accusatory letters to coworkers).  ATo hold otherwise would place a heavy burden on employers, making them
responsible for being aware of every aspect of every employee=s religion which could require an accommodation.@  Knight v. Conn. Dep=t of Pub. Health, 275 F.3d 156, 168 (2nd
Cir. 2001) (holding employer was not on notice of employees= need to evangelize when employees never requested accommodation, even
though employer knew employees were born-again Christians).    

In its no-evidence summary
judgment motion, the District argued that there was no evidence of the second
prima facie element, that is, no evidence that Collins had informed the
District that cutting her hair conflicted with her beliefs as a Pentecostal.  Collins concedes that she never explicitly
informed the District of this conflict but argues that Curry=s testimony as one of the decision-makers who terminated Collins is
some evidence that the District knew that Collins=s refusal to have any of her hair cut for the drug test arose from her
Pentecostal beliefs.








Curry testified that she knew
Collins was Pentecostal; she knew Collins wore her hair long because she was
Pentecostal;  she knew Collins had cut
her hair in the past; she had seen it cut; she knew some, but not all,
Pentecostal women wore their hair long; she knew some Pentecostal women cut
their hair; and she did not know the details of the Pentecostal belief
system.  At most, this is some evidence
that Curry knew that Pentecostal women have a preference for long hair.  It is no evidence that Curry knew that the
Pentecostal faith forbids hair cutting, particularly in light of Curry=s testimony that she had seen Collins and other Pentecostal women with
their hair cut.

Curry=s testimony falls short of showing that the District had enough
information about Collins=s religious
needs to permit the District to understand the existence of a conflict between
Collins=s religious practices and the District=s job requirements.  See Heller,
8 F.3d at 1439.  When instructed to
submit a hair sample, Collins did not inform the District that cutting her hair
to provide a sample conflicted with her Pentecostal beliefs or even mention the
words Areligion@ or Areligious@; instead,
according to Collins herself, she made only a vague statement that the District=s request was unconstitutional. 
Even coupled with Curry=s knowledge about Pentecostalism, this was not enough to apprise the
District of a conflict between its requirements and Collins=s religious beliefs.  To hold
otherwise would require the District to inquire into every aspect of Collins=s faith which might require an accommodation when she did not even
raise her religious beliefs as an objection to the District=s request for a hair sample.  See
Knight, 275 F.3d at 168.  We decline
to impose such a heavy burden on the District.








Collins argues that Curry=s testimony that Aif she had said something about not wanting to cut her hair, I=m absolutely positive it would have triggered something, in my
awareness, about how she felt about her hair,@ coupled with Collins=s own testimony that she told Curry, Bach, and Marshall, AI don=t cut my
hair . . . and I=m not going
to allow you to cut it,@ raises a
fact issue as to whether Curry understood that Collins=s objection arose from her religious beliefs.  We disagree that this testimony suggests a
connection in Curry=s mind
between Collins=s long hair
and her Pentecostal beliefs.  Nothing in
the two statements highlighted by CollinsCeven when read togetherClinks Collins=s refusal to
submit a hair sample to her religion.  As
we have already observed, there is no evidence that Curry knew Collins=s faith prohibited her from cutting her hair.

We hold that Collins failed
to produce evidence on the second of the three prima facie elements.  Therefore, the trial court did not err by
granting the District=s
no-evidence summary judgment motion.  We
overrule Collins=s first and
second issues.

III.            
Attorney=s
fees and costs

In her third and fourth issues, Collins argues
that the trial court erred by granting the District=s
motion for attorney=s fees
and costs because her claims were not frivolous and because the trial court=s jurisdiction over the case expired
before it signed the attorney=s
fees order.








A.               
Procedural history

While the District requested an order granting
attorney=s fees in
the prayer of its motion for summary judgment, it did not present any evidence
of its fees.  The trial court granted the
District=s motion
for summary judgment on April 21, 2006, with an order that recited in its
entirety,

Before the Court is Defendant=s Motion for Summary Judgment.  After considering the Motion and the evidence,
and hearing the arguments of counsel, this Court finds that the Motion should
be, and therefore is GRANTED. 

 

On May 3, 2006, the trial court signed an AAmended
Order Granting Defendant=s
Motion for Summary Judgment,@
which recited,

Before the Court is Defendant=s Motion for Summary Judgment.  After considering the Motion and the
evidence, and hearing the arguments of counsel, this Court finds that the
Motion should be, and is therefore GRANTED.

 

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED
that Defendant=s Motion
for Summary Judgment shall be and is hereby granted in all respects, that all
of Plaintiff=s claims
against Defendant shall be and are hereby dismissed with prejudice, that
Plaintiff take nothing by her suit, and that Defendant be in all things
discharged.  All costs of Court are taxed
against Plaintiff, for which let execution issue.

 

This judgment constitutes a final disposition of
all claims and all parties and is appealable. 

 








The District filed a motion for attorney=s fees and costs on May 15, 2006.  Collins filed her notice of appeal on May 22,
2006.  After she failed to pay for the
clerk=s record,
we dismissed the appeal on July 27, 2006.  
Collins filed a motion for rehearing, arguing that the District=s motion for costs and attorney=s fees was a motion to modify the
judgment and therefore extended the deadline to file the clerk=s record under rule 35.1.  Collins argued in the alternative that
because the trial court had not yet ruled on the District=s counterclaim and motion for costs and
attorney=s fees, a
final, appealable order had not yet been entered.  On August 28, 2006, we issued an order
reinstating the appeal but expressing our concern that this court lacked
jurisdiction over the appeal because the trial court=s
May 3 order did not appear to be a final, appealable order.  We abated the appeal until September 7, 2006,
to permit the parties a reasonable time to finalize and correct what appeared
to be an interlocutory order. 

Meanwhile, on June 23, 2006, the trial court held
a hearing on the District=s
motion for costs and attorney=s
fees.  On September 7, 2006, the trial
court signed a AFinal
Summary Judgment,@ granting
the District=s motion
for summary judgment and awarding the District $27,849 in attorney=s fees incurred in the trial court and
up to $17,500 for attorney=s
fees on appeal, plus $4,651.06 in taxable court costs.  We received a copy of the judgment that same
day, and on September 14, we issued a letter stating that we had jurisdiction
over the appeal. 








B.                
Trial court=s
jurisdiction

In her fourth issue, Collins argues that the trial
court lacked jurisdiction to sign the September 7 AFinal
Summary Judgment@ because
the May 3 order was a final, appealable judgment and the trial court=s plenary power to change the judgment
expired 105 days later on August 16, 2006. 
We disagree.

The general rule, with a few mostly statutory
exceptions, is that an appeal may be taken only from a final judgment.  Lehmann v. Har‑Con Corp.,  39 S.W.3d 191, 195 (Tex. 2001).  A judgment that finally disposes of all
remaining parties and claims, based on the record in the case, is final,
regardless of its language.  Id. at
200.  But

[a]n
order does not dispose of all claims and all parties merely because it is
entitled Afinal@, or because the word Afinal@
appears elsewhere in the order, or even because it awards costs.  Nor does an order completely dispose of a
case merely because it states that it is appealable . . . .

 








Id. at 205.  On the
other hand, A[a]
statement like, >This
judgment finally disposes of all parties and all claims and is appealable=, would leave no doubt about the court=s intention,@
but Ait may of
course be necessary for the appellate court to look to the record in the case.@ 
Id. at 206.  AThe record may help illumine whether an
order is made final by its own language, so that . . . an order that some party
should not reasonably have regarded as final may not be final despite language
that might indicate otherwise.@  Id. 
AIf the
appellate court is uncertain about the intent of the order, it can abate the
appeal to permit clarification by the trial court.@  Id.

Collins argues that the May 3 order was a final,
appealable judgment because it contained the sentence, AThis
judgment constitutes a final disposition of all claims and all parties and is
appealable.@  But the order=s
inclusion of the words Afinal@ and Aappealable@ does not override the fact that the
District=s
counterclaim for attorney=s
fees remained pending and unresolved in the trial court. 

Uncertain about the effect of the May 3 order, we
abated the case until September 7 for clarification by the trial court.  The trial court responded by signing the
September 7 AFinal
Summary Judgment@ and
awarding attorney=s fees to
the District.  Thus, looking beyond the
May 3 order to the rest of the record, it appears that the trial court did not
intend the May 3 order to be an appealable, final judgment despite the Aall claims and all parties@ verbiage.








Under these circumstances, we hold that the  May 3 order was not a final judgment and did
not affect the trial court=s
plenary power over the case.  Only when
the trial court signed the September 7 judgment and actually disposed of the
District=s
counterclaim for attorney=s
fees did the plenary-power clock start counting down.  See Tex. R. Civ. P.  329b (providing that plenary-power deadlines
are calculated from the date the trial court signs the judgment).  Therefore, we hold that the trial court had
jurisdiction to sign the September 7 order, and we overrule Collins=s fourth issue.

C.                
Propriety of attorney=s
fee award

In her third issue, Collins argues that the trial
court erred by awarding attorney=s
fees to the District because her claim was not frivolous, meritless, or
unreasonable.

Labor code section 21.259(a) provides that A[i]n a proceeding under this chapter, a
court may allow the prevailing party, other than the commission, a reasonable
attorney=s fee as
part of the costs.@  Tex.
Lab. Code Ann. ' 21.259(a) (Vernon 2006).  A district court has discretion to
award attorney=s fees to
a prevailing employer in an employment discrimination case, provided the
plaintiff=s claims
were frivolous, meritless, or unreasonable or the plaintiff continued to
litigate after it became clear that the claim was frivolous.  Elgaghil v. Tarrant County Junior Coll.,  45 S.W.3d 133, 144‑45 (Tex. App.CFort Worth 2000, pet. denied) (citing Christiansburg
Garment Co. v. EEOC, 434 U.S. 412, 420‑22, 98 S. Ct. 694, 699‑701
(1978)).  However, attorney=s fees are not appropriate simply
because the plaintiff loses the case; rather, to show that a lawsuit was
without merit, the defendant must establish that the case was groundless or
without foundation.  Elgaghil, 45
S.W.3d at 145 (citing Christiansburg Garment Co., 434 U.S. at 421‑22,
98 S. Ct. at 700‑01).








We review a trial court=s
award of attorney=s fees
under section 21.259 for abuse of discretion. 
Greathouse v. Glidden Co., 40 S.W.3d 560, 571 (Tex. App.CHouston [14th Dist.] 2001, no
pet.).  A trial court Aabuses its discretion when it reaches a
decision so arbitrary and unreasonable as to amount to a clear and prejudicial
error of law.@  Johnson v. Fourth Court of Appeals, 700
S.W.2d 916, 917 (Tex. 1985).  Findings of
fact are not required in an abuse of discretion review.  Crouch v. Tenneco, Inc., 853 S.W.2d
643, 646 (Tex. App.CWaco
1993, writ denied).  In the absence of
findings of fact, a trial court=s
judgment implies all necessary facts required to support it.  Worford v. Stamper, 801 S.W.2d 108, 109
(Tex. 1990).








Three courts have upheld attorney=s fees awards to defendants under
section 21.259(a).  In Elgaghil,
we upheld such an award where the plaintiff did not exhaust administrative
remedies with regard to one claim and produced no probative summary judgment
evidence to show that the defendant=s
nondiscriminatory reason for terminating him was untrue and pretextual; thus,
we deemed the plaintiff=s
claims to be Agroundless.@ 
Elgaghil, 45 S.W.3d at 145. 
In Winters v. Chubb & Son, Inc., the Fourteenth Court of
Appeals upheld an award of attorney=s
fees to an individual defendant because A[i]t
is well established in Texas that an individual cannot be held personally
liable under@ chapter
21.  132 S.W.3d 568, 580 (Tex. App.CHouston [14th Dist.] 2004, no
pet.).  In Pope v. MCI Telecomms.
Corp., the Fifth Circuit upheld an award when the plaintiff Afrivolously and unreasonably ignor[ed]
altogether the Texas time limitation. 
She came with no [summary judgment] evidence to support her charge that
her discharge was related to the filing of a Workers=
Compensation claim; thus her charge was groundless and unreasonable.@ 
937 F.2d 258, 267 (5th Cir. 1991), cert. denied, 504 U.S. 916
(1992).

Collins argues that those three cases are
distinguishable from this case because Aeach
of those suits was procedurally dead in the water before it was ever filed.@ 
We disagree with her characterization of those cases.  The decisions in Elgaghil and Pope depended
at least in part on the failure of the respective plaintiffs to come forward
with evidence to support their claims, and such failure rendered the plaintiffs= claims Agroundless.@

Just as the plaintiffs in Elgaghil and Pope
failed to come forward with summary judgment evidence to support essential
elements of their claims, Collins failed to come forward with summary judgment
evidence to support an essential element of her claim.  Just as the plaintiffs=
failure to come forward with evidence in Elgaghil and Pope rendered
their claims Agroundless,@ Collins=s
failure to come forward with evidence provided a reasonable basis for the trial
court to find her claim groundless and award attorney=s
fees to the District.








Under these circumstances, we hold that the trial
court did not abuse its discretion by awarding attorney=s
fees to the District.  We overrule
Collins=s third
issue.

IV.            
Conclusion

Having overruled all of Collins=s issues, we affirm the trial court=s judgment.

 

ANNE GARDNER

JUSTICE

 

PANEL A:   CAYCE, C.J.; HOLMAN and GARDNER, JJ.

 

DELIVERED:  June 14, 2007











[1]See Tex. R. App. P. 47.4.