COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-06-176-CV

JACKIE COLLINS APPELLANT

V.

TARRANT APPRAISAL DISTRICT APPELLEE

------------

FROM THE 236TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

This is a religious discrimination case.  Appellant Jackie Collins appeals from a summary judgment and an award of attorney’s fees and costs granted in favor of her former employer, Appellee Tarrant Appraisal District (“the District”).  We affirm.

Background

Collins sued the District for religious discrimination, alleging that the District wrongfully failed to make reasonable accommodations and terminated her employment when Collins refused to submit a hair sample for drug testing because to cut her hair would violate her religious beliefs as an adherent of the Pentecostal faith.  The following evidence is relevant to her claims and the District’s summary judgment motion.

Collins was hired by the District in 1996.  In December 2003, the District received an anonymous letter alleging that Collins and two other employees were using drugs.  Three District officials—Cheryl Curry, Stuart Bach, and John Marshall—questioned Collins about the allegation.  Collins denied that she was using drugs. 

Bach asked Collins to sign a consent form for “a screening test for illegal drugs, illegally used drugs and/or alcohol which entails the collection of urine, hair, and other necessary medical tests.”  Collins inquired what they wanted her to do, and Marshall told her that they just wanted her to submit a urine sample.  Collins signed the form, went to a testing lab, and submitted a urine sample for analysis.  The drug test came back negative.  

In February 2004, after one of the other accused employees tested positive for drugs, Curry, Bach, and Marshall presented Collins’s previously-signed drug-test consent form to her and asked her to submit a hair sample for additional testing.  When Collins refused, Curry, Bach, and Marshall told her she would be terminated. 

With regard to what she told Curry, Bach, and Marshall when she refused to give a hair sample, Collins testified,

And I told them that I couldn’t cut my hair.  I said “I don’t cut my hair, and you know I don’t cut my hair and never have the whole time I’ve worked here, and I’m not going to allow you to cut it.”  . . . I told John [Marshall] that I felt like I was being discriminated against; my civil rights were being violated.  I told John that I wanted to seek the advice of an attorney.  And he said, “I think that would be a good idea.” 

Similarly, Marshall testified that Collins said, “I’m not going to let someone cut my hair and you’re violating my constitutional rights,” and Bach likewise testified that Collins said the test was “unconstitutional and invasive.”  Collins concedes that she did not, during that conversation, tell Curry, Bach, and Marshall that she was Pentecostal or that cutting her hair would violate her religious beliefs, nor did she even mention the words “religion” or “religious.”  She further concedes that she never had a conversation with either Marshall or Bach about her beliefs as a Pentecostal generally and hair cutting specifically.  Curry, on the other hand, testified that she knew Collins was Pentecostal:

A. [I]f she had said something about not wanting us to cut her hair, I’m absolutely positive it would have triggered something, in my awareness, about how she felt about her hair.

Q. You knew that Ms. Collins didn’t cut her hair because she was Pentecostal?

A. I knew she was Pentecostal, and I knew that she had cut her hair previously.

Q. But you knew that Ms. Collins didn’t regularly cut her hair because she was Pentecostal?

A. She did cut her hair.  I saw her hair cut.  But if she had said something that was along the lines of “this is a religious objection,” we would have stopped it and taken a hair sample from a different place.

Q. I’m going back to your previous knowledge about Ms. Collins’s hair.  You perceived that she cut her hair less than other people, right?

A. She cut her hair less than other people, yes.  She had long hair—has long hair.

Q. And you understood this to be because she was Pentecostal?

A. I know that it was part of her--

[Objection omitted]

A. I knew her hair was long because she was Pentecostal.

Q. What did you know about the Pentecostal beliefs regarding cutting hair?

A. Some people cut their hair and some people don’t in the Pentecostal church.

Q. But you were aware that there were some people in the Pentecostal church who chose not to cut their hair?

A. I know Pentecostal woman [sic] a lot of times have long hair.  I don’t know the details of their belief system. 

Ultimately, Collins refused to submit a hair sample, and the District terminated her for insubordination. 

After receiving a right-to-sue letter from the Texas Workforce Commission, Collins sued the District for religious discrimination under chapter 21 of the labor code.  
See
 
Tex. Lab. Code Ann.
 § 21.051 (Vernon 2006).  The District filed an answer and a counterclaim seeking attorney’s fees and court costs because “Plaintiff’s claims lack merit and are brought in bad faith.”  Eighteen months later, the District filed a combined traditional and no-evidence motion for summary judgment.  The trial court granted the motion and eventually awarded the District $27,849 in attorney’s fees and $4,651 in court costs.  Collins filed this appeal. 

Summary Judgment

In her first two issues, Collins argues that the trial court erred by granting summary judgment because genuine issues of material fact exist as to (1) whether the District knew that cutting Collins’s hair conflicted with her religious belief and (2) whether she was sincere in her religious belief. 

Standard of Review

Under the traditional summary judgment rules, a defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim.  
IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason
,
 
143 S.W.3d 794, 798 (Tex. 2004); 
see
 
Tex. R. Civ. P.
 166a(b), (c).  When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant’s favor.
  
IHS Cedars Treatment Ctr.
, 143 S.W.3d at 798. 

Under the no-evidence summary judgment rules, after an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant’s claim or defense.  
Tex. R. Civ. P.
 166a(i).  The motion must specifically state the elements for which there is no evidence.  
Id.; Johnson v. Brewer & Pritchard, P.C., 
73 S.W.3d 193, 207 (Tex. 2002).  The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact.  
See
 
Tex. R. Civ. P.
 166a(i) & cmt.; 
Sw. Elec. Power Co. v. Grant, 
73 S.W.3d 211, 215 (Tex. 2002).

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion.  
Sudan v. Sudan,
 199 S.W.3d 291, 292 (Tex. 2006).  If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper.  
Moore v. K Mart Corp.
, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied). 

When a party moves for summary judgment under both rules 166a(c) and 166a(i), we will first review the trial court’s judgment under the standards of rule 166a(i).  
Ford Motor Co. v. Ridgway, 
135 S.W.3d 598, 600 (Tex. 2004).  If the appellants failed to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether appellee’s summary judgment proof satisfied the less stringent rule 166a(c) burden.  
Id.

Analysis

Under Texas Labor Code section 21.051, an employer commits an unlawful employment practice if because of religion, the employer “fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment.”  
Tex. Lab. Code Ann.
 § 21.051(1)
.  The Texas Legislature modeled chapter 21 of the Texas Labor Code after federal law for the express purpose of carrying out the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments.  
Id.
 § 21.001(1); 
Herbert v. City of Forest Hill
, 189 S.W.3d 369, 374 (Tex. App.—Fort Worth 2006, no pet.);
 Shear Cuts, Inc. v. Littlejohn
, 141 S.W.3d 264, 269 (Tex. App.—Fort Worth 2004, no pet.).  Consequently, when reviewing an issue brought under chapter 21, we may look not only to cases involving the state statute, but also to cases interpreting the analogous federal provisions.  
Caballero v. Cent. Power & Light Co.
, 858 S.W.2d 359, 361 (Tex. 1993); 
Herbert
, 189 S.W.3d at 374-75;
 Shear Cuts, Inc.
, 141 S.W.3d at 269.

The United States Supreme Court has prescribed a shifting burden of proof in employment discrimination cases.  
See McDonnell Douglas Corp. v. Green
, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25 (1973);
 Wal-Mart Stores, Inc. v. Canchola
, 121 S.W.3d 735, 739 (Tex. 2003).
  At the outset, the employee has the burden of establishing a prima facie case of unlawful discrimination. 
 Tex. Dep’t of Human Servs. of State of Tex. v. Hinds
, 904 S.W.2d 629, 636 (Tex. 1995).  A plaintiff bringing a religious discrimination claim under labor code chapter 21 makes a prima facie case by establishing three elements:  (1) the plaintiff has a bona fide religious belief that conflicts with an employment requirement, (2) the plaintiff informed the employer of this belief, and (3) the plaintiff suffered an adverse consequence for failure to comply with the conflicting employment requirement.  
Grant v. Joe Myers Toyota, Inc.
, 11 S.W.3d 419, 422-23 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

The second prima facie element “require[s] only enough information about an employee’s religious needs to permit the employer to understand the existence of a conflict between the employee’s religious practices and the employer’s job requirements.”  
Heller v. EBB Auto Co.,
 8 F.3d 1433, 1439 (9th Cir. 1993) (holding employee’s request to miss sales meeting and attend religious ceremony was sufficient information to apprise supervisor of conflict) (citing 
Redmond v. GAF Corp.
, 574 F.2d 897, 902 (7th Cir. 1978) (holding employee’s statement informing employer that “I [am] not able to work on Saturday because of my religious obligation” was sufficient)).

But knowledge that an employee has strong religious beliefs does not place an employer on notice that she might engage in any particular religious activity.
  Chalmers v. Tulon Co. of Richmond
, 101 F.3d 1012, 1020 (4th Cir. 1996), 
cert. denied
, 522 U.S. 813
 (1997) (holding employee’s notoriety as an evangelical Christian did not inform employer of her alleged religious need to send personal, accusatory letters to coworkers).  “
To hold otherwise would place a heavy burden on employers, making them responsible for being aware of every aspect of every employee’s religion which could require an accommodation.
”
  
Knight v. Conn. Dep’t of Pub. Health
, 275 F.3d 156, 168 (2nd Cir. 2001) (holding employer was not on notice of employees’ need to evangelize when employees never requested accommodation, even though employer knew employees were born-again Christians).    

In its no-evidence summary judgment motion, the District argued that there was no evidence of the second prima facie element, that is, no evidence that Collins had informed the District that cutting her hair conflicted with her beliefs as a Pentecostal.  Collins concedes that she never explicitly informed the District of this conflict but argues that Curry’s testimony as one of the decision-makers who terminated Collins is some evidence that the District knew that Collins’s refusal to have any of her hair cut for the drug test arose from her Pentecostal beliefs.

Curry testified that she knew Collins was Pentecostal; she knew Collins wore her hair long because she was Pentecostal;  she knew Collins had cut her hair in the past; she had seen it cut; she knew some, but not all, Pentecostal women wore their hair long; she knew some Pentecostal women cut their hair; and she did not know the details of the Pentecostal belief system.  At most, this is some evidence that Curry knew that Pentecostal women have a preference for long hair.  It is no evidence that Curry knew that the Pentecostal faith forbids hair cutting, particularly in light of Curry’s testimony that she had seen Collins and other Pentecostal women with their hair cut.

Curry’s testimony falls short of showing that the District had enough information about Collins’s religious needs to permit the District to understand the existence of a conflict between Collins’s religious practices and the District’s job requirements.  
See Heller,
 8 F.3d at 1439.  When instructed to submit a hair sample, Collins did not inform the District that cutting her hair to provide a sample conflicted with her Pentecostal beliefs or even mention the words “religion” or “religious”; instead, according to Collins herself, she made only a vague statement that the District’s request was unconstitutional.  Even coupled with Curry’s knowledge about Pentecostalism, this was not enough to apprise the District of a conflict between its requirements and Collins’s religious beliefs.  To hold otherwise would require the District to inquire into every aspect of Collins’s faith which might require an accommodation when she did not even raise her religious beliefs as an objection to the District’s request for a hair sample.  
See 
Knight, 
275 F.3d at 168.  We decline to impose such a heavy burden on the District.

Collins argues that Curry’s testimony that “if she had said something about not wanting to cut her hair, I’m absolutely positive it would have triggered something, in my awareness, about how she felt about her hair,” coupled with Collins’s own testimony that she told Curry, Bach, and Marshall, “I don’t cut my hair . . . and I’m not going to allow you to cut it,” raises a fact issue as to whether Curry understood that Collins’s objection arose from her religious beliefs.  We disagree that this testimony suggests a connection in Curry’s mind between Collins’s long hair and her Pentecostal beliefs.  Nothing in the two statements highlighted by Collins—even when read together—links Collins’s refusal to submit a hair sample to her religion.  As we have already observed, there is no evidence that Curry knew Collins’s faith prohibited her from cutting her hair.

We hold that Collins failed to produce evidence on the second of the three prima facie elements.  Therefore, the trial court did not err by granting the District’s no-evidence summary judgment motion.  We overrule Collins’s first and second issues.

Attorney’s fees and costs

In her third and fourth issues, Collins argues that the trial court erred by granting the District’s motion for attorney’s fees and costs because her claims were not frivolous and because the trial court’s jurisdiction over the case expired before it signed the attorney’s fees order.

Procedural history

While the District requested an order granting attorney’s fees in the prayer of its motion for summary judgment, it did not present any evidence of its fees.  The trial court granted the District’s motion for summary judgment on April 21, 2006, with an order that recited in its entirety,

Before the Court is Defendant’s Motion for Summary Judgment.  After considering the Motion and the evidence, and hearing the arguments of counsel, this Court finds that the Motion should be, and therefore is GRANTED. 

On May 3, 2006, the trial court signed an “Amended Order Granting Defendant’s Motion for Summary Judgment,” which recited,

Before the Court is Defendant’s Motion for Summary Judgment.  After considering the Motion and the evidence, and hearing the arguments of counsel, this Court finds that the Motion should be, and is therefore GRANTED.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Defendant’s Motion for Summary Judgment shall be and is hereby granted in all respects, that all of Plaintiff’s claims against Defendant shall be and are hereby dismissed with prejudice, that Plaintiff take nothing by her suit, and that Defendant be in all things discharged.  All costs of Court are taxed against Plaintiff, for which let execution issue.

This judgment constitutes a final disposition of all claims and all parties and is appealable. 

The District filed a motion for attorney’s fees and costs on May 15, 2006.  Collins filed her notice of appeal on May 22, 2006.  After she failed to pay for the clerk’s record, we dismissed the appeal on July 27, 2006.   Collins filed a motion for rehearing, arguing that the District’s motion for costs and attorney’s fees was a motion to modify the judgment and therefore extended the deadline to file the clerk’s record under rule 35.1.  Collins argued in the alternative that because the trial court had not yet ruled on the District’s counterclaim and motion for costs and attorney’s fees, a final, appealable order had not yet been entered.  On August 28, 2006, we issued an order reinstating the appeal but expressing our concern that this court lacked jurisdiction over the appeal because the trial court’s May 3 order did not appear to be a final, appealable order.  We abated the appeal until September 7, 2006, to permit the parties a reasonable time to finalize and correct what appeared to be an interlocutory order. 

Meanwhile, on June 23, 2006, the trial court held a hearing on the District’s motion for costs and attorney’s fees.  On September 7, 2006, the trial court signed a “Final Summary Judgment,” granting the District’s motion for summary judgment and awarding the District $27,849 in attorney’s fees incurred in the trial court and up to $17,500 for attorney’s fees on appeal, plus $4,651.06 in taxable court costs.  We received a copy of the judgment that same day, and on September 14, we issued a letter stating that we had jurisdiction over the appeal. 

Trial court’s jurisdiction

In her fourth issue, Collins argues that the trial court lacked jurisdiction to sign the September 7 “Final Summary Judgment” because the May 3 order was a final, appealable judgment and the trial court’s plenary power to change the judgment expired 105 days later on August 16, 2006.  We disagree.

The general rule, with a few mostly statutory exceptions, is that an appeal may be taken only from a final judgment.  
Lehmann v. Har-Con Corp
.,  39 S.W.3d 191, 195 (Tex. 2001).  
A judgment that finally disposes of all remaining parties and claims, based on the record in the case, is final, regardless of its language.  
Id. 
at 200.  But

[a]n order does not dispose of all claims and all parties merely because it is entitled “final”, or because the word “final” appears elsewhere in the order, or even because it awards costs.  Nor does an order completely dispose of a case merely because it states that it is appealable . . . .

Id. 
at 205.  On the other hand, “[a] statement like, ‘This judgment finally disposes of all parties and all claims and is appealable’, would leave no doubt about the court’s intention,” but “it may of course be necessary for the appellate court to look to the record in the case.”  
Id
. at 206.  “The record may help illumine whether an order is made final by its own language, so that . . . an order that some party should not reasonably have regarded as final may not be final despite language that might indicate otherwise.”  
Id.
  “If the appellate court is uncertain about the intent of the order, it can abate the appeal to permit clarification by the trial court.”  
Id.

Collins argues that the May 3 order was a final, appealable judgment because it contained the sentence, “This judgment constitutes a final disposition of all claims and all parties and is appealable.”  But the order’s inclusion of the words “final” and “appealable” does not override the fact that the District’s counterclaim for attorney’s fees remained pending and unresolved in the trial court. 

Uncertain about the effect of the May 3 order, we abated the case until September 7 for clarification by the trial court.  The trial court responded by signing the September 7 “Final Summary Judgment” and awarding attorney’s fees to the District.  Thus, looking beyond the May 3 order to the rest of the record, it appears that the trial court did not intend the May 3 order to be an appealable, final judgment despite the “all claims and all parties” verbiage.

Under these circumstances, we hold that the  May 3 order was not a final judgment and did not affect the trial court’s plenary power over the case.  Only when the trial court signed the September 7 judgment and actually disposed of the District’s counterclaim for attorney’s fees did the plenary-power clock start counting down.  
See 
Tex. R. Civ. P.
 
 329b (providing that plenary-power deadlines are calculated from the date the trial court signs the judgment).  Therefore, we hold that the trial court had jurisdiction to sign the September 7 order, and we overrule Collins’s fourth issue.

Propriety of attorney’s fee award

In her third issue, Collins argues that the trial court erred by awarding attorney’s fees to the District because her claim was not frivolous, meritless, or unreasonable.

Labor code section 21.259(a) provides that “[i]n a proceeding under this chapter, a court may allow the prevailing party, other than the commission, a reasonable attorney’s fee as part of the costs.”  
Tex. Lab. Code Ann. § 21.259(
a
) (
Vernon 
2006).  
A district court has discretion to award attorney’s fees to a prevailing employer in an employment discrimination case, provided the plaintiff’s claims were frivolous, meritless, or unreasonable or the plaintiff continued to litigate after it became clear that the claim was frivolous.
  Elgaghil v. Tarrant County Junior Coll.,
  45 S.W.3d 133, 144-45 (Tex. App.—Fort Worth 2000, pet. denied) (citing 
Christiansburg Garment Co. v. EEOC
, 434 U.S. 412, 420-22, 98 S. Ct. 694, 699-701 (1978)).  However, attorney’s fees are not appropriate simply because the plaintiff loses the case; rather, to show that a lawsuit was without merit, the defendant must establish that the case was groundless or without foundation.  
Elgaghil
, 45 S.W.3d at 145 (citing 
Christiansburg Garment Co., 
434 U.S. at 421-22, 98 S. Ct. at 700-01).

We review a trial court’s award of attorney’s fees under section 21.259 for abuse of discretion.  
Greathouse v. Glidden Co.
, 40 S.W.3d 560, 571 (Tex. App.—Houston [14th Dist.] 2001, no pet.).  A trial court “abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law.” 
 Johnson v. Fourth Court of Appeals
, 700 S.W.2d 916, 917 (Tex. 1985).  Findings of fact are not required in an abuse of discretion review.  
Crouch v. Tenneco, Inc.
, 853 S.W.2d 643, 646 (Tex. App.—Waco 1993, writ denied).  In the absence of findings of fact, a trial court’s judgment implies all necessary facts required to support it.
  Worford v. Stamper
, 801 S.W.2d 108, 109 (Tex. 1990).

Three courts have upheld attorney’s fees awards to defendants under section 21.259(a).  In 
Elgaghil
, we upheld such an award where the plaintiff did not exhaust administrative remedies with regard to one claim and produced no probative summary judgment evidence to show that the defendant’s nondiscriminatory reason for terminating him was untrue and pretextual; thus, we deemed the plaintiff’s claims to be “groundless.”  
Elgaghil
, 45 S.W.3d at 145.  In 
Winters v. Chubb & Son, Inc.
, the Fourteenth Court of Appeals upheld an award of attorney’s fees to an individual defendant because “[i]t is well established in Texas that an individual cannot be held personally liable under” chapter 21.  132 S.W.3d 568, 580 (Tex. App.—Houston [14th Dist.] 2004, no pet.).  In 
Pope v. MCI Telecomms. Corp.
, the Fifth Circuit upheld an award when the plaintiff “frivolously and unreasonably ignor[ed] altogether the Texas time limitation.  She came with no [summary judgment] evidence to support her charge that her discharge was related to the filing of a Workers’ Compensation claim; thus her charge was groundless and unreasonable.”  937 F.2d 258, 267 (5th Cir. 1991), 
cert. denied
, 504 U.S. 916 (1992).

Collins argues that those three cases are distinguishable from this case because “each of those suits was procedurally dead in the water before it was ever filed.”  We disagree with her characterization of those cases.  The decisions in 
Elgaghil 
and 
Pope 
depended at least in part on the failure of the respective plaintiffs to come forward with evidence to support their claims, and such failure rendered the plaintiffs’ claims “groundless.”

Just as the plaintiffs in 
Elgaghil
 and 
Pope
 failed to come forward with summary judgment evidence to support essential elements of their claims, Collins failed to come forward with summary judgment evidence to support an essential element of her claim.  Just as the plaintiffs’ failure to come forward with evidence in 
Elgaghil
 and 
Pope 
rendered their claims “groundless,” Collins’s failure to come forward with evidence provided a reasonable basis for the trial court to find her claim groundless and award attorney’s fees to the District.

Under these circumstances, we hold that the trial court did not abuse its discretion by awarding attorney’s fees to the District.  We overrule Collins’s third issue.

Conclusion

Having overruled all of Collins’s issues, we affirm the trial court’s judgment.

ANNE GARDNER

JUSTICE

PANEL A: CAYCE, C.J.; HOLMAN and GARDNER, JJ.

DELIVERED:  June 14, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P. 
47.4.